(November 9, 1989)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL RAMOS, Appellant.—Judgment, Supreme Court, Bronx County (Walter M. Schackman, J.), rendered February 15, 1983, which convicted defendant, after a jury trial, of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the second degree, and sentenced him to two concurrent terms of imprisonment of from 20 years to life on the sale count and from five years to life on the possession count, to run concurrently with a sentence of from 15 years to life previously imposed in another proceeding, is unanimously affirmed.

Appellant was convicted for the sale and possession of heroin after he met with two undercover police officers and delivered to them three ounces of heroin for $40,000. Tape recordings of telephone conversations between appellant and the officers in which the details of the sale were agreed to were admitted into evidence, as were other telephone conversations between appellant and cohorts in which arrangements were made to obtain the heroin appellant was to sell.

Appellant seeks a new trial on the ground that error was committed in allowing into evidence a tape recording of a telephone conversation he had with a cohort moments before the buy took place in which he told the cohort that he was dispatching codefendant Montanez to pick up some "rice", a code word for cocaine. This tape was offered by the People to show that Montanez was a participant in an "overall conspiracy" to sell drugs in which all five defendants were engaged. An instruction explaining that the tape was being admitted only for this purpose might have been appropriate but was not given, perhaps because not requested in a formal request to charge. However, an offer of proof by the People that would have explained that rice meant cocaine was disallowed by the trial court on the ground that the probative value of such proof with respect to "this particular sale" of heroin was outweighed by its "highly prejudicial" effect on appellant; the

trial court also prohibited the People from commenting upon the proof relating to rice in their summation. Thus, the jury was never told that rice meant cocaine, although they might have adduced as much from comments made by the prosecutor in his opening statement. Explaining to the jury why Montanez was not physically present at the scene of the buy when it took place, the prosecutor said in his opening statement that the jury would learn from a taped telephone conversation that in fact Montanez was there only moments before, but was given "another job to do" by appellant, namely, "to pick up some cocaine", which he did, returning only moments after the police undercovers left. Counsel for Montanez immediately moved for a mistrial, which was denied by the trial court without prejudice to renewal when the tape was offered into evidence, but the motion was never renewed.

Appellant argues that these references to cocaine and rice concerned another drug transaction having nothing to do with the heroin sale charged in the indictment, and that their cumulative effect was to deprive him of a fair trial. We reject this argument since the evidence of appellant's guilt of the crime that is charged is so overwhelming as to render any error in admitting the tape, and prosecutorial misconduct in referring to it, harmless (see, People v Cook, 42 NY2d 204, 208 [harmless error analysis applied to affirm conviction even though proof of uncharged crimes admitted into evidence was "highly prejudicial and inexcusably inflammatory"]; see also, People v Mayrant, 43 NY2d 236, 240 [conviction reversed only after determining that proof of uncharged crimes was not harmless]). Indeed, as indicated by the jury's acquittal of Montanez, it appears that the jury gave little, if any, consideration to appellant's uncharged possible involvement with cocaine. If the jury gave no weight to the adverse inference that could be drawn against Montanez from the conversation, they must have given it little weight against appellant as well.

Other remarks made by the prosecutor in his opening statement concerning the $50,000 that appellant posted to bail codefendant Carmona out of jail, which included $12,000 in marked bills used in the buy, while indicating that Carmona had committed another crime of a serious nature, could only have had an impact on Carmona's defense, not appellant's.

Appellant's argument that his trial lawyer was ill-prepared and did not adequately cross-examine the People's witnesses is conclusory and fails to show that he was deprived of a meaningful representation by the action or inaction of his lawyer (People v Rivera, 71 NY2d 705, 708-709). Nor is there any

merit to appellant's argument that his sentence of from 20 years to life was unduly harsh. Appellant was the prime mover in this $40,000 sale of heroin for which he faced a minimum sentence of from 15 years to life, and had a prior conviction for a sale of cocaine for which he had already received a sentence of from 15 years to life. The instant sentence was made to run concurrently with the prior sentence, but could have been made to run consecutively. The fact that appellant received a sentence greater than that offered during plea negotiations does not indicate that he was being punished for proceeding to trial *(People v Patterson,* 106 AD2d 520, 521; *People v Diaz,* 131 AD2d 775, 776). Concur— Murphy, P. J., Sullivan, Ross, Asch and Wallach, JJ.